IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| NOEL SAKURA SCHLEGEL, | No. 82647-6-I |
| Respondent, | |
| v. | DIVISION ONE |
| BRYAN MICHAEL PSIMAS, | UNPUBLISHED OPINION |
| Appellant. | |

CHUN, J. — Noel Schlegel petitioned for an order for protection against Bryan Psimas to stop him from stalking her. During a hearing on the matter, the trial court gave Psimas the choice to proceed with oral testimony that day or to continue the hearing for submission of written materials instead. Psimas chose to proceed with oral testimony. After considering the evidence, the trial court granted the petition. Psimas appeals, contending the court abused its discretion because there was insufficient evidence of stalking and the court denied him the opportunity to submit written evidence. For the reasons below, we affirm.

I. BACKGROUND

In March 2021, Schlegel petitioned for an order for protection against Psimas in King County Superior Court. Schlegel asserted that Psimas was stalking her and that she feared for her safety.

The trial court held a hearing on April 13, and both parties represented themselves. The court asked Psimas if he was prepared to present oral testimony and have the court decide the matter that day or if he wanted an

Citations and pin cites are based on the Westlaw online version of the cited material.

opportunity to provide a written statement or evidence in his defense. Psimas responded, "If the evidence shows that there is a justified case for issuing a domestic violence order, then I would like to get a continuance and review documents that my attorney provided, you know, submit the appropriate evidence and statement behind it." Then he said, "But, I mean, I can also provide my verbal testimony. I'm pretty confident. . . . [I]t's up to you. . . . If you want a written statement from me I can do that, too." The court replied:

> I'm asking you how you want to proceed today. And let me tell you one more time and then I'm going to have you tell me how you want to proceed. You have the option to either proceed today with oral testimony. I would take your testimony into consideration and then I'd make my ruling; or, if you want to provide—this is up to you—a written statement, then I would re-issue and put a deadline as to when that statement is due.
>
> It's either a yes you want to go forward or a no you want to be able to provide a written statement. So tell me, do you want to go forward today, yes or no?

Psimas responded that he would proceed that day. The court again stated, "I'm not going to then give you an option to later provide written statements in your defense. It's one or the other today." And Psimas said, "Okay. I'll go ahead and provide oral testimony. That's fine."

The court then heard the parties' oral testimonies. Schlegel's testimony and sworn statement in her petition set out the following: She and Psimas had been in a romantic relationship and worked at the same nonprofit organization. The relationship ended in September 2020. Afterward, Psimas "incessant[ly]" telephoned her over the course of many hours on multiple days in October and November. She blocked his phone number in November, and that day he arrived

2

at her home and painted a heart on her fence.  He then took a photo of the heart and posted it on social media where she saw it.  He also started trying to reach her through social media, her personal and work emails, and a video chat phone application.  Later that month, Psimas attended an event at which Schlegel was volunteering even though she asked him not to come.  She yelled at him to stop stalking and harassing her.  He apologized and said it was "not a big deal."  He returned to the event multiple times to try to talk to her and take photographs of her.  Schlegel blocked Psimas on Instagram and he created a "fake account" from which to follow her.  In December, the fake account viewed a post in which Schlegel revealed her location at a park and then Psimas drove by the park.  When Schlegel used an old phone of hers, Psimas called her on that phone; she answered and screamed at him to leave her alone and blocked his number again.  In January 2021, the nonprofit organization terminated Schlegel's employment.  That month, she encountered Psimas on the street while walking her dog and when she asked him why he was following her, he left without responding.  Also that month, he attended a virtual event at which he knew she would be speaking.  Concerned for her safety, Schlegel moved to a new home.  In March, Psimas went to her previous home, where her grandmother still lived, and sat outside in his car for several minutes.  Schlegel stated that she feared for her safety and thought she was unsafe alone.

Psimas admitted to most of the alleged conduct such as calling Schlegel repeatedly, going to her house and painting a heart, attending the two events, creating a "fake" Instagram account, and driving by the park.  But he contended

that each action was for an innocuous reason. And he denied taking photographs of her or going to her former home in March. Psimas testified that Schlegel's petition was retribution for her termination from the nonprofit and that there was separate litigation against her for the circumstances surrounding that employment matter.

The court determined that Schlegel met her burden of proof. It found Schlegel credible and Psimas not credible. It concluded that Psimas committed acts of domestic violence pursuant to chapter 26.50 RCW and granted the petition for an order for protection.

Psimas appeals.

## II. ANALYSIS

Psimas says the court abused its discretion by granting a protection order because insufficient evidence supports a finding that he stalked Schlegel and the court should not have denied him the opportunity to present written evidence. Schlegel responds that the evidence she presented supports the court's order and that Psimas had the opportunity to present evidence in opposition to her petition. We conclude the court acted within its discretion.

"We review the trial court's decision to grant or deny a protection order for abuse of discretion and determine if the decision is manifestly unreasonable or exercised on untenable grounds." Nelson v. Duvall, 197 Wn. App. 441, 451, 387 P.3d 1158 (2017). And "'[t]rial judges have wide discretion to manage their courtrooms and conduct trials fairly, expeditiously, and impartially.'" Bill & Melinda Gates Found. v. Pierce, 15 Wn. App. 2d 419, 444, 475 P.3d 1011 (2020)

4

(quoting In re Marriage of Zigler and Sidwell, 154 Wn. App. 803, 815, 226 P.3d 202 (2010), review denied, 197 Wn.2d 1006, 483 P.3d 785 (2021)). "'A decision is based on untenable grounds or for untenable reasons if the trial court applies the wrong legal standard or relies on unsupported facts.'" Nelson, 197 Wn. App. at 451 (quoting Salas v. Hi–Tech Erectors, 168 Wn.2d 664, 669, 230 P.3d 583 (2010)). We review the record in the light most favorable to the prevailing party to determine if "substantial evidence supports the [trial court's] findings of fact and, if so, whether the findings support the conclusions of law." Perry v. Costco Wholesale Inc., 123 Wn. App. 783, 792, 98 P.3d 1264 (2004). "Substantial evidence is a quantum of evidence sufficient to persuade a rational and fair-minded person that the premise is true." Nguyen v. Seattle, 179 Wn. App. 155, 163, 317 P.3d 518 (2014). "[W]e defer to the trial court on the persuasiveness of the evidence, witness credibility and conflicting testimony." Nelson, 197 Wn. App. at 451.

The Domestic Violence Prevention Act[1] allows a person to petition for an order for protection in cases of domestic violence. RCW 26.50.030. The Act defines "domestic violence" as, "Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, sexual assault, or *stalking* as defined in RCW 9A.46.110 of one intimate partner by another intimate partner." RCW 26.50.010(3)(a) (emphasis added). "Intimate partner" includes "persons sixteen years of age or older with whom a person

---

[1] Ch. 26.50 RCW.

sixteen years of age or older has or has had a dating relationship."

RCW 26.50.010(7).  RCW 9A.46.110 defines stalking as follows:

> (1) A person commits the crime of stalking if, without lawful authority . . .
>
> (a) He or she intentionally and repeatedly harasses or repeatedly follows another person; and
>
> (b) The person being harassed or followed is placed in fear that the stalker intends to injure the person, another person, or property of the person or of another person.  The feeling of fear must be one that a reasonable person in the same situation would experience under all the circumstances; and
>
> (c) The stalker either:
>
> (i) Intends to frighten, intimidate, or harass the person; or
>
> (ii) Knows or reasonably should know that the person is afraid, intimidated, or harassed even if the stalker did not intend to place the person in fear or intimidate or harass the person.

"Attempts to contact or follow the person after being given actual notice that the person does not want to be contacted or followed constitutes prima facie evidence that the stalker intends to intimidate or harass the person."

RCW 9A.46.110(4).  "It is the *combination* of separate acts—none of which is necessarily criminal in its own right—that must be 'seriously alarm[ing], annoy[ing], harass[ing], or detrimental' to the victim in order for the perpetrator to have committed the criminal offense of stalking."  State v. Haines, 151 Wn. App. 428, 435, 213 P.3d 602 (2009) (emphasis and alterations in original) (quoting RCW 10.14.020(1)).

Psimas contends that no evidence shows (1) he intended to frighten, intimidate, or harass Schlegel, and (2) Schlegel feared physical injury.  But evidence that Psimas attempted to contact or follow Schlegel after she gave him

6

"actual notice" that she "does not want to be contacted or followed constitutes prima facie evidence" that he intended to intimidate or harass her. RCW 9A.46.110(4). In November, Schlegel blocked Psimas's calls and, when he arrived at an event uninvited, yelled at him to stop stalking and harassing her. His continued attempts to contact and follow Schlegel after she told him to stop support a finding of intent to frighten, intimidate, or harass. And Schlegel testified that she feared for her safety and feared being alone. This evidence is "sufficient to persuade a rational and fair-minded person that" Schlegel feared physical injury. Nguyen, 179 Wn. App. at 163. Psimas points to his testimony explaining his innocuous reasons for attempting to contact Schlegel and being in her vicinity, but the court found him not credible and we do not disturb credibility determinations on appeal. Nelson, 197 Wn. App. at 451.

Next, Psimas says he did not understand that by choosing to proceed with the hearing, he was waiving his opportunity to submit evidence. But the court explained that Psimas could choose to proceed on oral testimony alone or continue for the submission of written materials. When Psimas sought to proceed that day while also preserving his ability to submit written materials, the court repeated the choices and asked what Psimas wanted to do. When Psimas responded that he wanted to proceed, the court stated, "I'm not going to then give you an option to later provide written statements in your defense. It's one or the other today." Psimas replied, "Okay. I'll go ahead and provide oral testimony. That's fine." Given the record, Psimas cannot claim that the choice between proceeding that day on testimony alone or continuing the hearing for the

submission of evidence was unclear. Psimas contends that, had the court given him the opportunity, he would have presented evidence that Schlegel filed her petition as retribution for termination of her employment and evidence of separate litigation against her. He says this evidence would have been likely to change the court's decision. But he testified as to both, which allowed the court to consider them in making its decision. The trial court acted within its discretion in ruling on the matter at the hearing.

We affirm.

_Chun, J._

WE CONCUR:

_Mann, C.J._          _Appelwick, J._